UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION ) <br> OF THE UNITED STATES OF AMERICA ) <br> FOR A WARRANT TO OBTAIN ) <br> LOCATION INFORMATION, INCLUDING ) <br> PRECISION LOCATION INFORMATION; ) <br> SUBSCRIBER AND TRANSACTIONAL ) <br> RECORDS; CELL SITE INFORMATION; ) <br> AND FOR A PEN REGISTER AND TRAP ) <br> AND TRACE DEVICES FOR PHONE ) <br> NUMBERS **(314) 255-8018**. ) | No.  4 22 MJ 8058 SRW <br><br> **FILED UNDER SEAL** |

**AFFIDAVIT**

I, Jarryd W. Powell being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a warrant and order pursuant to Rule 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for information associated with the T-Mobile telephone **(314) 255-8018** (hereinafter referred to as the "**subject cellular telephone**"), to require T-Mobile (hereinafter "the Provider"), and/or any service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, to disclose to the United States location information, including precision location information, transactional and subscriber data and cell site location information, and the installation and use of other pen register and trap and trace devices associated with the **subject cellular telephone,** as described in Attachment B to the requested warrant and order.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice, currently assigned to the St. Louis Division.  I have been a DEA Special Agent for approximately five years. Prior to my assignment with DEA, I was a Federal Air Marshal with the Department of Homeland Security for approximately four and a half years. Prior

1

to my appointment as a Special Agent with the DEA, I attended an eighteen week Basic Agent Training Academy at Quantico, Virginia. My time at the academy consisted of training in investigative method techniques such as physical and electronic surveillance, interviewing, confidential source management, as well as firearms training, defensive tactics training, arrest techniques, and search warrant execution. During my tenure with DEA, I have been assigned to conduct long-term complex investigations of drug-trafficking organizations dealing in fentanyl, heroin, cocaine, methamphetamine, marijuana and other controlled substances. Based on my training, experience, the experience of the overall investigative team, and my own participation in controlled substance investigations, I am familiar with the methods of operation of drug traffickers. I am familiar with and have used normal methods of investigation, including, but not limited to, physical and electronic surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the utilization of undercover agents and the use of court-authorized wire and electronic intercepts. I am also familiar with federal criminal laws, particularly those laws relating to narcotics. I am an investigative and law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and as such, I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516, Title 18, United States Code.

3. The present affidavit is being submitted in connection with an application of the United States for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the **subject cellular telephone**.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the **subject cellular telephone** is currently being used in

GOV-0000139

connection with violations of Title 21, United States Code, Section 841(a)(1) and 846 (hereinafter referred to as "the subject offenses"), by Jervon MARTIN (hereinafter referred to as "MARTIN"), utilizing the **subject cellular telephone** and others known and unknown. There is also probable cause to believe that the location information described in Attachment B to the requested warrant and order will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

## BACKGROUND CONCERNING WIRELESS PROVIDERS

5. Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

a. Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

b. Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.  For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact.  Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities.

GOV-0000140

Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

   c. Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

   d. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.  A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.  The provider could have this information because each cellular device has one or more unique identifiers embedded inside it.  Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI").  When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

   e. Wireless providers also maintain business records and subscriber information for particular accounts.  This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date

GOV-0000141

of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

     f. Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as precision location information or PLI data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

     g. In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the United States. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Provider, any telecommunication service providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision

GOV-0000142

location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap and trace data.

**INVESTIGATION AND PROBABLE CAUSE**

6.  The United States, including the Drug Enforcement Administration (DEA), is conducting a criminal investigation of MARTIN, and others known and unknown, regarding the commission of the subject offenses.

7.  As described in further detail below, the **subject cellular telephone**, with no subscriber information, is used by MARTIN in connection with the commission of the subject offenses.

8.  In September 2021, DEA began investigating the distribution of methamphetamine, heroin, and counterfeit pharmaceutical pills by Jervon MARTIN. After conducting several controlled purchases of heroin and methamphetamine from MARTIN, on January 27, 2022, the Honorable Noelle C. Collins, United States Magistrate Judge for the Eastern District of Missouri, authorized the obtaining of precision location information for two telephones known to be used by MARTIN (314) 480-0148 and the **subject cellular telephone**[1],. On February 14, 2022, the Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri, authorized the interception of wire communications for the same two telephones known to be used by MARTIN, (314) 480-0148 and the **subject cellular telephone.**[2]

9.  During the interception period, investigators intercepted telephone calls between MARTIN, utilizing the **subject cellular telephone**, and SUBJECT #3 utilizing telephone number (314) 363-4425.[3]

---

[1] Those authorizations expire on March 13, 2022.
[2] Those authorizations expire on March 16, 2022.
[3] Investigators believe SUBJECT #3 is the user of telephone number 314-363-4425 due to the subscriber address of 9103 Tutwiler Avenue, which was provided by SUBJECT #3 as his primary address during multiple arrests. (314) 363-4425 was also provided by SUBJECT #3 as his

10. On February 21, 2022, at approximately 10:36 AM, while monitoring telephone the **subject cellular telephone**, a call was intercepted between MARTIN and SUBJECT #3. The following is a detailed transcription of the phone call:

| | |
|---|---|
| SUBJECT #3: | Hello? |
| MARTIN: | Where you at, cuz? |
| SUBJECT #3: | [Clears throat] Shit, uh… coming from St. Charles. I gotta stop at the store real quick though. And then, shit, I'ma shoot to the shop. |
| MARTIN: | Damn, uh, what you thinking? About like an hour or something? |
| SUBJECT #3: | Yeah, like an hour. |
| MARTIN: | A'ight, shit. Well I'm waiting on you then, cuz. |
| SUBJECT #3: | A'ight, I got you. I'ma call you when I'm like, real, like real close. Cuz I ain't, I ain't gonna take me long. It won't take long. |
| MARTIN: | Alright, yeah. Cuz you know I, I'm, shit, I'm… I'm right here. I'm already right here for real, waiting on you. |
| SUBJECT #3: | A'ight. |
| MARTIN: | Alright. |
| SUBJECT #3: | Bye. |
| MARTIN: | Alright, later. |

[END OF CALL]

11. Based upon my training and experience, I believe that MARTIN, **utilizing the subject cellular telephone**, was contacting SUBJECT #3, his source of supply, for the purpose of purchasing more controlled substances. When MARTIN says, "Where you at, cuz," I believe he is asking SUBJECT #3's location to know if he [MARTIN] can meet with SUBJECT #3 to purchase

---

primary contact number during multiple arrests. Furthermore, a search of CashApp revealed (314) 363-4425 to be linked to SUBJECT #3's account under the user name "$SUBJECT #3"

7

additional quantities of narcotics. When SUBJECT #3 tells MARTIN he's going to "shoot to the shop," I believe SUBJECT #3 is telling MARTIN that he is going to stop by a stash location to pick up the additional narcotics. SUBJECT #3 then confirms with MARTIN that it will be an hour before MARTIN can meet him [SUBJECT #3] to purchase the narcotics. I believe that MARTIN then tells SUBJECT #3 that he [MARTIN] will be waiting until SUBJECT #3 is ready to meet. Furthermore, I believe SUBJECT #3 states that when he [SUBJECT #3] is ready to meet with MARTIN for the sale of narcotics, SUBJECT #3 will contact MARTIN via **subject cellular telephone** to let MARTIN know.

12. Investigators are aware that SUBJECT #3 has a criminal history to include Possession of Controlled Substance, Delivery/Manufacturing Imitation Controlled Substance, and Possession of a Controlled Substance Except 35 Grams or Less Marijuana. In the intercepted calls detailed in this affidavit, investigators believe that MARTIN, utilizing the **subject cellular telephone**, is calling SUBJECT #3 to inquire about meeting up and purchasing narcotics. From my training and experience, I am aware of the difference in communication between drug traffickers and their source(s) of supply verse their customers. The detailed interceptions, as outlined in this affidavit, align with MARTIN acting as a customer to SUBJECT #3 his source of supply. Based on SUBJECT #3's criminal history and the interceptions with MARTIN, investigators believe SUBJECT #3 is MARTIN's heroin source of supply.

13. On March 7, 2022, at approximately 11:51 AM, a call was intercepted between MARTIN, utilizing the **subject cellular telephone**, and SUBJECT #3 utilizing telephone number (314) 363-4425. The following is a detailed transcription of the phone call:

SUBJECT #3        What's up with it, cuz?

**MARTIN**:        What's the word, cuz? Where you at?

SUBJECT #3        Shit, uh… Bellefountaine. Finna' head up to the shop.

GOV-0000145

| | |
|---|---|
| **MARTIN:** | Oh, yeah? See, I'm trying to uh, come up see you. I'm trying to you know… |
| **SUBJECT #3:** | Yeah, I got you. I'm sure. I'm throwing my shoes on. Already know, bro. |
| **MARTIN:** | Yeah, I'm um… I'm already like kinda in the area so just uh.. just call me once you um… call me once uh… once you get up there. Cut like a "P" down though. |
| **SUBJECT #3** | Alright, I got you. |
| **MARTIN:** | Alright. |
| **SUBJECT #3:** | Alright. |

**[END OF CALL]**

14. Based on my training and experience, I believe that MARTIN, utilizing the **subject cellular telephone**, is calling SUBJECT #3 for the purpose of obtaining more controlled substances. I believe MARTIN is asking where SUBJECT #3 is located in order to arrange for a location to meet and purchase narcotics. When SUBJECT #3 states, "Finna head up to the shop," I believe he saying that he is about to head to a stash location to where controlled substances are located. I believe when MARTIN states, "I'm trying to uh... come up see you," he is asking SUBJECT #3 if they can meet so MARTIN can purchase more narcotics. I believe SUBJECT #3 then confirms with MARTIN that he is getting ready to leave in order to pick up the narcotics then meet with MARTIN. I believe MARTIN is asking SUBJECT #3 to contact him via the **subject cellular telephone** when SUBJECT #3 is ready to meet. I believe MARTIN is also asking SUBJECT #3 to prepare the narcotics for MARTIN to sell when he says, "Cut like a 'P' down though." Furthermore, I believe that MARTIN is asking SUBJECT #3 to take approximately one pound from the larger quantity of narcotics that SUBJECT #3 has. I believe "P" is a term being used by MARTIN to describe one pound.

9

15. I believ SUBJECT #3 s a narcotics source of supply for MARTIN. Furthermore, I believe that MARTIN is using the **subject cellular telephone** to commit the subject offenses. The ability to continue to track MARTIN's location will assist investigators in determining locations where MARTIN is purchasing, selling, and/or storing narcotics. I believe that having the ability to track the location of **subject cellular telephone**, and to obtain information regarding the contacts will help agents determine the identity of other individuals involved in the drug trafficking conspiracy as well as to ascertain the location of locations where narcotics are stored.

## CONCLUSION

16. Based on the above information, your affiant submits that there is probable cause to believe that the **subject cellular telephone** is currently being used in connection with the commission of the subject offenses, by MARTIN, and others known and unknown. There is also probable cause to believe that the location information described in Attachment B to the requested warrant and order will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

17. None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only. Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

GOV-0000147

18. The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

I state under penalty of perjury the forgoing is true and correct.

3/14/2022
DATE

Jarryd W. Powell
Special Agent
Drug Enforcement Administration

Sworn to, attested to, and subscribed before me by reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 on this ___14th___ day of March, 2022.

HONORABLE STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

11

# ATTACHMENT A

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(c)(1)(A) & B, (c)(2), and 3122 and Federal Rule of Criminal Procedure 41 requesting that the Court issue a Warrant and Order requiring a telecommunications service provider reflected in Part II of this Attachment A, to disclose the records and other information concerning the account described in Part I of this Attachment A.

I. The Account(s)

The Order applies to certain records and information associated with the following:

| Provider Name | Number or identifier | Owner, if known | Subject of investigation, if known |
|---|---|---|---|
| T-MOBILE | (314) 255-8018 (the subject cellular telephone) | UNKNOWN | Jervon MARTIN OR unknown individuals |

II. The Provider

Records and information associated with the subject cellular telephone that is within the possession, custody, or control of **T-MOBILE,** and other applicable service providers reflected on the list contained in this Attachment A**,** including information about the location of the subject cellular telephone if it is subsequently assigned a different call number.

1

GOV-0000149

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm |    Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
|   d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications |   Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications |   Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications [4] |
| | Metro Teleconnect | | |

---

[4] Last Update: 03/17/2019

GOV-0000150

# ATTACHMENT B

It is hereby ordered, pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &(B), (c)(2) and 3123 and Federal Rule of Criminal Procedure 41, that the Provider(s) identified in Attachment A shall disclose to the United States the following:

**I.      PRECISION LOCATION INFORMATION**

    **A.      Information to be Disclosed by the Provider**

All information for the following time period of forty-five days from the date of this Warrant and Order, that is for the time period from March 14, 2022, to April 27, 2022 11:59 p.m. (CT) during all times of day and night, regarding the location of the subject cellular telephone described in Attachment A.

"Information about the location of the subject cellular telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precision location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the investigative agency(ies).

    **B.      Information to Be Seized by the United States**

All information described above in Part I, Section A that constitutes evidence of violations of Title 21, United States Code, Section 841(a)(1) and 846 involving Jervon MARTIN and others known and unknown.

GOV-0000151

## II.    CELL TOWER RECORDS AND OTHER TELECOMMUNICATION DATA

For the subject cellular telephone identified in Attachment A, the following telecommunication records and information, but not the contents of any communication for the past thirty (30) days from the date of this Warrant and Order and at reasonable intervals for up to forty-five (45) days from the date of this Warrant and Order, the following:

**Information to be Disclosed by the Provider**

1. All available names, addresses, and identifying information, and other subscriber and service feature information and types of service utilized;

2. Length of service;

3. All telephone numbers, Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI") numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, Media Access Control (MAC),  and primary long-distance carrier;

4. Subscriber information available for any originating telephone number;

5. Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls to the subject cellular telephone) for the above-specified time period;

6. Means and source of payment for services, including any credit card or bank account number, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned subject cellular telephone;

2

7. Cellular telephone records and information pertaining to the following, for the above-specified time period:

(a) call detail information such as (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

(b) cell site activation information, including information identifying the antenna tower receiving transmissions from the subject cellular telephone number, and any information on what portion of that tower is receiving a transmission from the subject cellular telephone number, at the beginning and end of a particular telephone call made to or received by the subject cellular telephone number;

(c) numbers dialed;

(d) call duration;

(e) incoming numbers if identified;

(f) signaling information pertaining to that number;

(g) a listing of all control channels and their corresponding cell sites;

(h) an engineering map showing all cell site tower locations, sectors and orientations;

(i) subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the subject cellular telephone;

(j) historical location estimates and range to tower information, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD), True Call;

3

GOV-0000153

   (k)  Time Difference of Arrival (TDOA), and,

   (l)  Internet Protocol (IP addresses) utilized by and signaled to and from the subject cellular telephone.

### III. PEN REGISTERS AND TRAP AND TRACE DEVICES

For the subject cellular telephone identified in Attachment A for a period of forty-five (45) days from the date of this Warrant and Order, the following:

1. Pursuant to Title 18, United States Code, Section 3123, pen register and trap and trace devices, including enhanced caller identification, may be installed by the investigative agency(ies) and used to record or decode dialing, routing, addressing, or signaling information, and to capture the incoming electronic or other impulses, which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the subject cellular telephone number, including the direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, pertaining to the subject cellular telephone described in Attachment A., including the date, time, and duration of the communication, and the following, without geographic limit, including:

  a. IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

  b. Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

4

    c.   IP addresses of any websites or other servers to which the subject cellular telephone connected;

    d.   Source and destination telephone numbers and email addresses;

    e.   "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

2.    The Provider, and/or any telecommunications service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall initiate caller identification on the subject cellular telephone identified in Attachment A, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers

3.    The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall furnish the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, forthwith all information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace devices, including enhanced caller identification, unobtrusively and with minimum interference to the services that are accorded persons with respect to whom the installation and use is to take place.

4.    The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable telecommunications service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, with the results of the pen register and trap and trace devices, including enhanced caller identification, at reasonable intervals for the duration of this Warrant and Order.

GOV-0000155

5.       Should the subject cellular telephone identified in Attachment A and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of this Order, the request for pen register and trap and trace devices, including enhanced caller identification, shall remain in effect for any new telephone to which the subject cellular telephone listed above is changed throughout the effective period of these Warrants and Orders.

6.       The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall be provided compensation by the lead investigative agency for reasonable expenses incurred in providing technical assistance.

7.       Pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2), the Provider, and the service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall not disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order to a subscriber or lessee or to any other person, except that the provider may disclose the warrant to an attorney for the provider for the purpose of receiving legal advice.

This Warrant and Order does not authorize interception of any communications as defined in Title 18, United States Code, Section 2510(4), but authorizes only the disclosure of signaling information, including cell site information, precision location information, including GPS information, related to the subject cellular telephone.

The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to whom this Warrant and Order is directed will begin monitoring the location of the

GOV-0000156

subject cellular telephone by one of the methods described in this Warrant within ten (10) days of the date of this Warrant and Order.